IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00047-PAB-KLM

AURORA BANK FSB, a Federal Savings Bank,

    Plaintiff,

v.

NETWORK MORTGAGE SERVICES, INC.,
a Washington corporation d/b/a NETWORK HOME LOANS,

    Defendant.

---

**ORDER**

---

This matter is before the Court on a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and Memorandum in Support [Docket No. 16] filed by defendant Network Mortgage Services, Inc. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

**I. BACKGROUND**

This case arises out of defendant Network Mortgage Services, Inc.'s sale of home mortgage loans to plaintiff Aurora Bank FSB, formally Lehman Brothers Bank FSB. Docket No. 1 at 1, ¶ 1. Plaintiff's home office and principal place of business is, and has been at all times relevant, in Littleton, Colorado. *Id.* at 2, ¶ 3; Docket No. 20-1 at 3, ¶ 10. Defendant is incorporated in the state of Washington and its principal place of business is in Lynwood, Washington. Docket No. 1 at 2, ¶ 4. Defendant is a "correspondent lender" who originates home mortgage loans and sells them to various buyers on the secondary mortgage market. *Id.* at 2, ¶ 8-9.

On June 21, 2006, defendant applied to plaintiff's Littleton, Colorado office seeking "correspondent lender" status in order to perform mortgage loan business with plaintiff; plaintiff's employees in the Littleton office reviewed the application.  Docket No. 20-1 at 2, ¶¶ 3-4.  Subsequently, Lehman Brothers Bank, FSB and defendant entered into a Loan Purchase Agreement (the "Agreement"), which provided for defendant's sale of mortgage loans to plaintiff.  Docket No. 1 at 3, ¶10-12.  The Agreement lists Lehman Brothers Bank, FSB as having an office in Wilmington, Delaware, Docket No. 1-1, but plaintiff has provided an affidavit stating that all correspondence regarding the Agreement was conducted from the Littleton office.  Docket No. 20-1 at 3, ¶ 12.  The Agreement indicates that the plaintiff would be subject to the Aurora Loan Services' "Seller's Guide."  Docket No. 1-1 at 1.  Pursuant to the Seller's Guide, defendant represented and warranted that: the notes and mortgages provided were genuine; defendant's representations were true and accurate; the documents furnished by defendant were true and accurate; the origination of loans was legal, proper, and conformed to industry standards; and that defendant did not commit fraud in connection with originating the loans.  Docket No. 1 at 3-4, ¶ 14.  In the event of a breach of the Agreement or Seller's Guide, defendant was required, at plaintiff's election, to repurchase the loans at issue or indemnify plaintiff from any loss sustained from defendant's breach.  *Id.* at 4, ¶¶ 15-16.  The Agreement stated that the laws of the State of New York would apply to the relationship between the parties.  Docket No. 1-1 at 2.

Pursuant to the Agreement, defendant sold numerous loans to plaintiff, including the Lopez and Maldonado Loans (collectively, the "Subject Loans").  Docket No. 1 at 3,

¶ 13; Docket No. 1-2.  Defendant corresponded with employees in the Littleton office regarding the sale and purchase of the Subject Loans.  Docket No. 20-1 at 3, ¶ 11. Defendant sent the Subject Loans' origination files and loan documents to the Littleton office.  *Id.* at 4, ¶ 17.  Plaintiff claims that, after reviewing the Subject Loans at the Littleton office, it discovered that the Subject Loans' borrowers made material misrepresentations and that the Subject Loans were not in compliance with the Seller's Guide's underwriting guidelines.  Docket No. 1 at 5, ¶ 22.  From its Littleton office, plaintiff demanded that defendant repurchase the Subject Loans or indemnify plaintiff for losses relating to the Subject Loans.  *Id.* at 5, ¶ 19; *see also* Docket No. 20-1 at 4, ¶¶ 18-19.  Defendant did not comply with plaintiff's demands.  Docket No. 1 at 5, ¶ 20.[1]

On January 9, 2013, plaintiff filed the instant action.  It brings claims against defendant for breach of contract, breach of express warranty, and unjust enrichment. Docket No. 1 at 6-8.  Specifically, plaintiff alleges that defendant breached the Agreement and Seller's Guide because the Subject Loans contained material misrepresentations and underwriting errors and that, as a result, defendant failed or refused to repurchase the Subject Loans or indemnify plaintiff as required by the Agreement and Seller's Guide.  *Id.*  Defendant moved to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3).  Docket No. 16.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether

---

[1] In June 2012, Nationstar Mortgage, LLC began servicing the Subject Loans and is assisting plaintiff in administering plaintiff's loan repurchase and indemnity claims. Docket No. 20-1 at 4, ¶¶ 20-22.  Nationstar employees assisting in administering claims on the subject loans work out of the Littleton office.  *Id.*

the Court has personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over defendants. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The plaintiff can satisfy its burden by making a prima facie showing of personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Court will accept the well-pleaded allegations of the complaint as true to determine whether plaintiff has made a prima facie showing that personal jurisdiction exists. *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id*. The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Dudnikov*, 514 F.3d at 1070. "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Id*.

In reviewing a motion to dismiss for improper venue pursuant to Rule 12(b)(3), "'the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'" *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1260 (10th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (2004)).

### III. ANALYSIS

#### A. Personal Jurisdiction

In a diversity case, a federal court has personal jurisdiction over a defendant if jurisdiction is consistent with the state's long arm statute and if jurisdiction does not

violate the due process clause of the Fourteenth Amendment. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004). The Colorado long arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent of the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *Pro Axess, Inc. v. Orlux Distrib., Inc.,* 428 F.3d 1270, 1276 (10th Cir. 2005); *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).

Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. Where general jurisdiction is asserted over a non-resident defendant who has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates that the defendant maintains "continuous and systematic general business contacts" in the state. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Specific jurisdiction is present where the defendant has purposefully directed its activities at the residents of the forum and the litigation results from injuries that arise out of or relate to those activities. *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999). Plaintiff does not assert general jurisdiction; thus, the Court will analyze defendant's contacts with Colorado as they relate to specific jurisdiction.

The specific jurisdiction analysis is two-fold. First, the Court must determine whether defendant has such minimum contacts with Colorado that defendant "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the Court must determine whether defendant purposefully directed its activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether plaintiff's claims arise out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted). Second, if defendant's actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over defendant offends "traditional notions of fair play and substantial justice." *Id.* at 113. This latter inquiry requires a determination of whether the Court's exercise of personal jurisdiction over defendant is "reasonable" in light of the circumstances of the case. *Id*.

### 1. Minimum Contacts

The mere quantum of contacts between the forum and defendant is not determinative. *Far W. Capital Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995). Instead, the analysis should focus on the quality of the contacts, their significance to the venture, and the overall purpose of the parties' efforts. *Id*. Generally, an individual's contract with an out-of-state party cannot, standing alone, establish sufficient minimum contacts with the forum state. *Burger King*, 471 U.S. at 478. But "parties who reach out beyond one state and create continuing relationships and obligations with citizens of

another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Id*. at 473. To determine whether a non-resident defendant has purposefully established minimum contacts with the forum state by contracting with another party, courts examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. at 479.

Plaintiff asserts that mortgage loans were bought and sold from Littleton, Colorado at all times relevant to the Subject Loans. Docket No. 20-1 at 3, ¶ 10. Plaintiff argues that defendant purposely directed activity at Colorado because it: (1) applied to and conducted negotiations with plaintiff's Colorado office for correspondent lender status; (2) entered into the Agreement with plaintiff; (3) was directed to send the loan files and documents to plaintiff's Colorado office; (4) sent the Subject Loans' files to plaintiff's Colorado office; and (5) corresponded with employees in the Colorado office regarding the Subject Loans, the Agreement, and loan origination guidelines. Docket No. 20 at 7-8; *see* Docket No. 20-1 at 2-5, ¶¶ 3, 5, 8, 10, 11, 12, 16, 17. Plaintiff also asserts that the Seller's Guide, which governed the defendant's obligations, was maintained and updated in plaintiff's Colorado office. Docket No. 20-1 at 3, ¶¶ 13-15. Plaintiff's complaint further alleges that, in the event defendant breached its contractual obligations, defendant was obligated to repurchase the loans at issue from plaintiff and to indemnify plaintiff against claims arising from defendant's breach. Docket No. 1 at 4, ¶ 15.

Defendant argues that the terms of the Agreement weigh against finding minimum contacts. Specifically, defendant argues that Lehman Brothers Bank, FSB

was, at the time the Agreement was executed, a Delaware corporation with an office located in Colorado.  Docket No. 21 at 3.  Defendant argues that, because Lehman Brothers Bank, FSB was a citizen of Delaware, defendant did not reach out to conduct business with a Colorado entity.  Docket No. 16 at 6; Docket No. 21 at 3.  Although a plaintiff's citizenship for the purposes of diversity jurisdiction under 28 U.S.C. § 1332 may, in some cases, be relevant to personal jurisdiction, minimum contacts hinges on defendant's purposeful activities towards the forum state.  Notably, defendant does not dispute that it applied to plaintiff's Littleton office and corresponded with employees there with respect to the Subject Loans.  Furthermore, plaintiff provides evidence that mortgage loans were bought and sold, at all times relevant, from the Littleton office.  *See* Docket No. 20-2 at 1; Docket No. 20-1 at 3, ¶ 10.[2]  As a result, the Court finds defendant's argument unavailing.

Defendant also argues that the Agreement's choice of law provision, which states that the laws of the State of New York will govern the parties' relationship, weighs against a finding that defendant purposely availed itself of the protections of Colorado law.  Docket No. 21 at 3-4.  In *Burger King*, the Supreme Court held that a choice of law provision was evidence that the defendant "purposefully invoked the benefits and protections of a State's laws" but was not, by itself, sufficient to confer jurisdiction.  471 U.S. at 482 (internal quotations omitted).  While not dispositive, the parties' choice of New York law weighs against a finding of minimum contacts with Colorado.  Similarly,

---

[2]Lehman Brothers Bank FSB is not the only entity mentioned in the Agreement.  The Agreement also states that Aurora Loan Services' Seller's Guide will govern the relationship between the parties.  Docket No. 20-2.

the fact that defendant executed the Agreement in Washington is a consideration that should be viewed in defendant's favor, Docket No. 16-1 at 2, ¶ 9; *see OMI Holdings*, 149 F.3d at 1095, although this factor is not entitled to much weight given the prevalence of electronic transmission of signature pages.

Finally, defendant argues that plaintiff's actions in Colorado to update the Seller's Guide, maintain loan files, and service the loans at issue are irrelevant to a jurisdictional analysis. Docket No. 21 at 4. To the extent plaintiff's activities in Colorado are mere unilateral activity, such activities are insufficient to ground jurisdiction. *See World-Wide Volkswagen*, 444 U.S. at 298. While maintaining the Seller's Guide may be just such an activity, plaintiff's minimum contacts showing, as noted above, does not principally rest on its own activities.

Although this case presents a relatively close question, the Court finds that defendant's actions created a substantial connection with Colorado. The allegations in plaintiff's complaint and the facts set forth in the affidavit supporting plaintiff's response brief indicate that defendant purposefully applied to plaintiff's Colorado office seeking to conduct negotiations and acquire correspondent lender status. Although "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts," *Far West*, 46 F.3d at 1077, defendant's communications with plaintiff's Colorado office are evidence that defendant pursued a business relationship with a Colorado entity. *See Benton*, 375 F.3d at 1078. Rather than a random, attenuated, one-time connection with Colorado, defendant had a continuing contractual relationship to sell loans to plaintiff. Plaintiff's allegations also indicate that the parties' course of dealing involved defendant sending the relevant loan files and original loan documents to plaintiff's

9

Colorado office. Docket No. 20-1 at 4, ¶ 17. Moreover, in the event of a breach, defendant was required to repurchase the offending loans from plaintiff in Colorado and indemnify plaintiff for any losses. Plaintiff's claims arise, in a large part, out of defendant's alleged failure to meet those continuing obligations. See Docket No. 1 at 5, ¶ 19-24. As such, plaintiff's claims arise from those actions defendant directed at Colorado; thus, the Court finds that defendant's minimum contacts with Colorado are sufficient such that it could reasonably anticipate being haled into court here. See Burger King, 471 U.S. at 486.

### 2. Traditional Notions of Fair Play and Substantial Justice

Because plaintiff has satisfied the minimum contacts analysis, the burden now shifts to defendant to demonstrate that exercising personal jurisdiction would nonetheless "offend traditional notions of fair play and substantial justice." Dudnikov, 514 F.3d at 1080 (internal citation omitted). The minimum contacts and reasonableness components of the due process inquiry are inversely related. OMI Holdings, 149 F.3d at 1092. "'[T]he weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction [and t]he reverse is equally true.'" Id. (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994)). To satisfy this burden, defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477. This usually involves consideration of the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief,

> (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings*, 149 F.3d at 1095.

With regard to the first factor, defendant argues that the burden of defending this action in Colorado would be significant. Docket No. 16 at 9. Litigating in a distant forum state, without more, does not automatically place a substantial burden on defendant. *See Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013) (noting that travel from Alberta, Canada to Oklahoma was not a substantial burden); *Dudnikov*, 514 F.3d at 1081 (noting that, "in any case in which the parties reside in different fora, one side must bear the inconvenience of litigating 'on the road'"). Defendant further argues that, because plaintiff's breach of contract claim is based on allegations of misconduct that occurred in Washington, key witnesses reside in Washington and will not be subject to a trial subpoena in Colorado. Docket No. 21 at 5. It may be premature to determine, with any specificity, where the key witnesses in this case reside and, additionally, whether defendant would bear the entire burden of securing the witnesses' appearance in Colorado. The Court finds that defendant has failed to show that it would be substantially burdened by litigating this case in Colorado.

With regard to the forum state's interest in resolving the dispute, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings*, 149 F.3d at 1096. Plaintiff claims that it suffered its injury in Colorado. Thus, the Court finds that Colorado has an important interest in providing a forum for plaintiff to seek redress for its injuries. However, because plaintiff's claims will ultimately be resolved under New York law,

Colorado's interest in the general application of its laws is not implicated. *See id.* This factor weighs slightly in favor of finding personal jurisdiction over defendant.

The third factor "hinges on whether the [p]laintiff may receive convenient and effective relief in another forum." *Benton*, 375 F.3d at 1079. Defendant argues that plaintiff, having contracted with a Washington company, cannot now claim it would be inconvenient to litigate in Washington. Docket No. 16 at 10. Plaintiff concedes that witnesses are located in both Washington and Colorado, but argues relevant documents are located in Colorado. Docket No. 20 at 10. However, plaintiff makes no showing that transporting witnesses and documents would affect plaintiff's ability to receive effective relief in Washington. Thus, the factor weighs against finding personal jurisdiction over defendant. *Cf. OMI Holdings*, 149 F.3d at 1097 (noting that plaintiff's interest in convenient and effective relief "may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit").

The fourth factor asks "whether the forum state is the most efficient place to litigate the dispute." *Benton*, 375 F.3d 1080 (citations omitted). "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI Holdings*, 149 F.3d at 1097 (citations omitted). As noted above, neither Washington nor Colorado law will govern this case. The Court is aware of nothing that would indicate a danger of piecemeal litigation. Defendant maintains that key witnesses reside in Washington. Docket No. 16 at 10. Plaintiff

admits that the Subject Loans originated and were underwritten in Washington, but argues that defendant's breach occurred in Colorado when defendant allegedly sold non-compliant loans to plaintiff and later refused to repurchase or indemnify plaintiff for such loans. Docket No. 20 at 10-11. Plaintiff may be correct in arguing that defendant's alleged breach was discovered in Colorado after defendant sold the Subject Loans. However, plaintiff's case will also necessarily involve a showing of the conduct that occurred in Washington when the Subject Loans were created and underwritten. Thus, at this stage in the litigation, it is likely that the key witnesses and documentary evidence will be split between Colorado and Washington. The Court finds that this factor is neutral.

The fifth factor concerns the effect that an exercise of personal jurisdiction would have on "the substantive social policy interests of other states or foreign nations." *OMI Holdings*, 149 F.3d at 1097. This factor is most often implicated when the interests of a foreign nation are at stake. *See, e.g.*, *AST Sports Science*, 514 F.3d at 1062-63. Here, where neither Colorado nor Washington law will govern this dispute, the Court finds that this factor is neutral.

The Court finds plaintiff has met its burden of showing that defendant purposefully directed activities at Colorado and that this litigation resulted from those activities. *See Soma Medical*, 196 F.3d at 1298. Thus, in the absence of compelling reasons why the exercise of jurisdiction would be unreasonable, the Court finds that the exercise of personal jurisdiction over defendant is proper under the Due Process Clause.

### B.  Venue

Plaintiff alleges that venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claims occurred" in the District.  See Docket No. 1 at 2, ¶ 7.  Under this provision, which applies to all civil actions, venue is not limited to the district where the majority of the events or omissions occurred.  Rather, § 1391(b)(2) "contemplates that venue can be appropriate in more than one district . . . [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts."  *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165-66 (10th Cir. 2010) (applying prior version of § 1391) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)).  Once venue is challenged, it is the plaintiff's burden to show that venue is proper in the forum district.  *See Gwynn v. TransCor America, Inc.*, 26 F. Supp. 2d 1256, 1261 (D. Colo. 1998).  A court conducts a two-part analysis when reviewing challenges to venue under § 1391(b)(2).  First, it "examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims."  *Employers Mut. Cas. Co.,* 618 F.3d at 1166.  Second, it "determine[s] whether substantial 'events material to those claims occurred' in the forum district."  *Id.* (quoting *Gulf Ins.*, 417 F.3d at 357).  The Tenth Circuit has declined to hold that the venue inquiry is necessarily limited to the defendant's actions.  *See id.* at 1166 n.11.

As discussed above, plaintiff alleges that defendant breached contractual representations and warranties, failed to repurchase the Subject Loans, and refused to indemnify plaintiff for losses in connection with the Subject Loans.  Docket No. 1 at 6,

¶ 28. Plaintiff also brings an unjust enrichment claim based on those same alleged breaches. *Id.* at 7-8, ¶ 39-41. Plaintiff does not dispute that the Subject Loans originated in Washington, but argues that the breach occurred in Colorado when defendant allegedly sold the Subject Loans to plaintiff and subsequently failed to repurchase the loans or indemnify plaintiff. Docket No. 20 at 12. Defendant responds by arguing that the alleged misrepresentations and underwriter errors occurred in Washington. Docket No. 16 at 11. While defendant may be correct that a substantial part of the events giving rise to plaintiff's claims occurred in the District of Washington, the Court need not make that determination. *Employers Mut. Cas. Co.*, 618 F.3d at 1165 ("venue is not limited to the district with the *most* substantial events or omissions"). Defendant sold the Subject Loans to Colorado, plaintiff's analysis of the Subject Loans occurred in Colorado, plaintiff sent requests for repurchase or indemnification from Colorado, defendant allegedly failed to repurchase the Subject Loans from plaintiff in Colorado, plaintiff's alleged injury from defendant's breach occurred in Colorado, and plaintiff calculated its losses in Colorado. *See* Docket No. 20-1 at 4, ¶¶ 18-22. The Court finds that a substantial part of the acts or omissions giving rise to plaintiff's claims occurred in Colorado and, thus, venue is proper in the District of Colorado.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Docket No. 16] is **DENIED.**

DATED March 17, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge